We'll now move down the calendar to Speed versus United States of America, 20-3769. Good morning, Your Honors. May it please the Court. I'm Edward Zass from the Federal Defenders of New York. It's good to see you all again in person, if covered by masks, anyway. Yes, and I understand you're reserving two minutes for rebuttal. Yes, thank you, Judge. Very good. The principal issue presented on this appeal is the issue that was left open over the summer by the Martinez panel, and that's whether a substantive RICO offense in violation of 18 U.S.C. Section 1962c is a valid Section 924c crime of violence after Davis. The answer to that question is no. In deciding whether a crime qualifies as a crime of violence, this Court, of course, employs the categorical approach. A crime qualifies only if it qualifies in every instance, by its very definition. That's what Martinez says. We know that RICO can be committed in many, many ways that do not involve any force or any violence whatsoever. You make a fair point that some of the predicate acts do not involve violence, like gambling, et cetera. But here, the indictment charges, as the predicate acts, robbery, you know, multiple times. So why wouldn't we just focus on whether robbery qualifies this? I'm afraid my answer may be too long. We might have to take a deep dive into RICO statute. But the mere fact that the indictment alleges, as one predicate act, a violent one, does not make that necessarily an element that must be proven. Didn't the instructions to the jury make it quite clear that there had to be convictions in some New Jersey crimes in which violence was involved? Now, you know, not all of them were, but some were. And the instructions of the jury here in this case make it hard to say that they didn't come out with ones which were clearly violent. Let me just be clear about something. We're raising two legal issues on this appeal, and they're separate. One is a threshold question. Is a substantive RICO offense ever a crime of violence? If the answer to that question is no, then the instructions make no difference. But that is a separate issue we're raising. And I'm focusing now on the first issue, which, if you accept my argument, moots the second issue. And just so you know, I think the instructional issue is pending before a different panel in Stone against United States. And we expect that that may clarify the legal standard for this type of case, where there's some predicates that are invalid and some that are valid. So I'm focusing now on the pure question of law. Is it a crime of violence or not? And that first question may also be pending before a different panel. I think it's another case like, is it Laurent or something like that? There may be another panel that's got that. I hope they don't lose it. We may be wholly immobilized on this, waiting for other folks to decide these issues. But perhaps not. You don't know. Full disclosure is, I also have it in a case that has not yet been argued. It's actually the Ives-Sage defendants on appeal from the denial of their 2255. So there's about five defendants there. Just full disclosure, it's the Ives-Sage defendants. I'm sorry? Nothing, nothing, I'm just wondering. Can I ask you on the first issue? Again, who knows whether this panel will ultimately be in a position to rule on either one. But maybe we will. On the question of whether a substantive RICO violation can ever be a predicate for 924C. Can you describe why, I suppose, you take the position that substantive RICO violations cannot be divisible? On the theory that, and let me just lay out one of the things, 1956 lays, or the statute lays out a list, a very specific list of what statutes can and cannot be predicates. So in your view, tell us why you couldn't divide those up. Yes, yes. And let's say, let's take a different case to make it hypothetical simpler. Let's say that the RICO violation charged three predicates, all of them first degree murder, under federal law. Let's just say, so we don't even get into questions of analogs. That's it. Why would that not be categorically viewed as a divisible statute? And the divisions that we're looking at are absolutely, without doubt, crimes of violence. Yes, so, Your Honor, you've given me probably the hardest and most complicated example to answer, but let me give it a shot. I say that because that may actually be the one instance where it could qualify as a substantive RICO, as a crime of violence. And I say that because if we go to the penalty provision of RICO, which is 1963, right? The default statutory maximum for every 1962 C offense, whether it's tremendously violent or whether it's an illegal poker game, is zero to 20 years. But there's a max of life if the predicate itself carries a maximum of life. So in your example- They become elements, you're saying, because they jack it up. Exactly. And that's a very good point. So to take that out of the equation- Yes. And I see your point. Let's take armed bank robbery, right? Which is going to have a 20-year max, I think, so that you don't have the bump. So why don't we take that? I'll switch my hypothetical and give you three predicate racketeering acts of 2113B, armed bank robbery, so we don't have the bump. I'm sorry, I've got to just push back a little on the example again, because again, that, because it's a federal crime. And when RICO lists the racketeering activity in 1961 sub 1 or sub A, it treats the state predicates in a very different way than the federal. So the federal- That's why I'm trying to take baby steps here. Why don't we take the state offense, and I can give you the answer now, and then I'm happy to go to the next one, but you'll see the contrast. You follow it the way you think. So let's just take robbery, for example, right? The example here. The question for divisibility is the same as the question of statutory construction. Did Congress, when it enacted RICO in the 1970s or so, did it intend to create one federal crime, RICO? Or did it intend for each of the different predicate acts that are listed, state anyway, did it tend to make those separate federal RICO crimes? Obviously, they're separate federal state crimes. But did Congress intend to have a RICO, a federal RICO, a federal RICO robbery crime, and then a federal RICO extortion crime, and a federal RICO bribery crime, and on and on and on? And so let me tell you why the answer has to be no. Going to subsection 1962C, which is titled prohibited acts, right? That's where Congress creates the actual conduct offense, and there's four of them, A, B, C, and D, in 1962, right? And we're talking about 1962C, which lays out a very simple, well, in theory, it's a very simple, it's about a sentence, right? That you have to engage in a pattern of racketeering activity. And then you go to the definitional section, and you figure out what pattern of racketeering activity is, and it's at least two predicate acts, and then it refers you to the acts of racketeering, which we're calling predicate acts. And so the first thing about the text is that that's a strange way. If Congress were really intending to create, say, a federal RICO robbery offense, separate from other federal RICO offenses, it's saying, okay, there's a federal RICO robbery offense, and then if a prosecutor decides it's a New York robbery, that's one kind. And then there are going to be 50 of those because there's 50 states, which means Congress, for that one example, would have to be thinking, okay, we're going to create 50 different crimes for that one example. Why is it, though, and it's interesting, you're framing it as whether Congress views them as separate and distinct crimes, and I don't know, maybe that's relevant if you were going to look at double jeopardy analysis or something. But why is that the way to frame it, as opposed to saying, well, what are the elements of this offense? We have to just look at the elements, and if the elements of necessity are violent, then there you go. I guess I'm not sure why is it that it needs to be framed in the way that you're describing it at a big picture level. I understand your question. Well, because the question of whether it's divisible is the same question as are these separate elements, right? So typically, one example would be intentional murder is subparagraph one of a statute, and reckless murder is subparagraph two. To be divisible, a court would have to say, these are two separate crimes with their own distinct elements. They're not just different ways of committing one kind of murder. But when the court is charging the jury, and you're charging the jury on RICO with robbery, New York robbery, the court would be charging the elements of all of that. Isn't that so? It's not so under this Court's cases beginning with Bogaric in 1983, which said, no, Congress did not intend to incorporate the state penal code of every state. It's enough for a court to say, generically to a jury, what the offense means. So what does robbery mean? The unlawful taking by force or something like that. It's not required to go over all the elements. It's been a long time since I charged a jury in a RICO case, but my recollection is you would charge, you know, you have to find the predicate act and would be – you would give some elements, whether they're precisely the New York elements. But the point is you would be charging elements for the jury to find, including as to the predicate acts. Well, I think that's certainly the better practice, but the court has consistently said that it's not required. And the court couldn't have said that if they were elements. If they're elements, they're elements, and they must be given to the jury in every case without exception. So that's one supporting – What if the generic definition, then, of robbery, you know, let's say you may be right. You don't have to describe the elements of New Jersey law, but if the generic description of robbery, which is going to be laid out in, I suppose, some hypothetical elements, are by definition violent. It means hitting somebody over the head, say. No, no. I understand that. You still have to give the jury, you know, may not understand what the crime means enough to resolve it. So then let's just go back to the divisibility question, then. Assume for the sake of argument you wouldn't have to say under New Jersey law this is so, but nevertheless you need to find whatever it is. Let's stick with robbery. Yes. And the way it's going to necessarily be defined for the jury is something that entails violence, unquestionably, just hypothetically. Right. Look, but the jury does not have to find that predicate act or any violent predicate act to convict a victim. Well, sure, but in a particular case it's going to be alleged, it's going to be charged. They're going to have to check off a box on which racketeering acts they found constitute the pattern, right? And they have to be unanimous. Just give them a generic – And they have to be unanimous on the predicate acts they find. So that's the thing is we do get specific. We do break this down. I mean it sort of is comparable to when you charge an 846 drug conspiracy, right? And then you have a little checklist to say, you know, was there a drug conspiracy? Yeah. If you do find a conspiracy, then check off drug type and quantity. And then now we know what are the sub-elements that the jury has found. Isn't that effectively the same way that RICO works? It's not because in a typical case special verdicts are not required. They're discretionary even in RICO. So you may have a jury in a particular case finding robbery as one of the predicate acts. Why should we, if it can be done in this way, assume it wasn't done in the particular case? And then we get back to the issue of what happened here. That is, you're making the general argument that because it could be done in a way that would not meet the requirements, we should throw it out even when it's done in a different way. Well, but that is the nature of the categorical enterprise, right? A defendant just has to say there's one way of committing this offense that doesn't meet the definition of crime of violence. There's an infinite or a lot of ways you can violate RICO that don't involve violence at all. But that could be more of a modified categorical approach problem, I think, is what Judge Calabresi is positing. If it's divisible and we can figure out which section was used, which subsection or sub-elements were used, some qualify, some don't, the fact that in a particular case we don't know how the divisible statute was divided, okay, then you're out of luck. It's not a qualifier. But I think we're positing the situation where it's divisible and sometimes you can tell and sometimes not. Maybe if a district judge fails to give a particular special verdict form, then, yeah, the government's going to be out of luck. They can't prove that really those were the predicates. Doesn't, in other words, the question of divisibility always turn on whether in a particular case what was done would be divisible, even though there might be some consequence, some situations where it would not be divisible? No. I mean, that's not my understanding of the modified approach. The modified approach first asks what are the elements of this offense or that offense? Was Congress creating one offense with just very broadly lots of ways of committing it, or was it committing two or, in this case, an infinite number of effectively separate federal crimes? Now, I should say, see, I'm over my time. No, finish your answer here, please. I am giving you an admittedly simple and straightforward rule to adopt. A violation of RICO, at least where the maximum for the predicates is no more than 20, is not a crime of violence under the categorical approach. I think that simple is not always wrong, particularly when RICO itself and 924C is already so complicated. It's a straightforward rule. The opposite rule, a kind of holding that RICO itself is subject to the modified categorical approach, I think runs counter to the policies and approaches that the Supreme Court has adopted that were the motivating force for adopting the categorical approach in the first place. it would mean that there would now be a fact-intensive, document-intensive inquiry to figure out, not only was the person convicted of Section 1962C, couldn't stop there, right, because it's too many ways. So you'd have to go and then find out not only what the charge was, what the instructions were, whether there was a special verdict or not, which predicates the jury actually found and relied on. I think that that endeavor is not a wise way to go. A bright-line rule would be the right way to go, and I don't think, frankly, it would do much to undermine law enforcement or the public interest. There are many other crimes, particularly with these sort of violent defendants generally, where the government can still prosecute them for the violent crime and the 924C. It's just that RICO is not one of them. Okay. You have reserved two minutes for rebuttal, and we'll see you again shortly. Thank you. Let's now hear from the government. Mr. Is it Gutwillig? That's right. May it please the Court. My name is Jacob Gutwillig, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal. What we have here is a collateral challenge by way of a second or successive 2255 motion challenging Mr. Speed's conviction. As an initial matter, he will have to surmount the high bar to meet the plain error standard. That is where we start before we get to any of these questions about whether the error was harmless. Have we held the invocation or plain error of Rule 52B that actually applies on collateral attacks? I'm sorry, Your Honor. I didn't quite hear that. I'm sorry. I'll lean in, as I've been telling people to do. Have we held clearly that Rule 52B standard applies when we're in a 2255? I'm not sure that the Court has held that specifically, although it would potentially be or would seem to be the standard applicable here. What's the basis for invoking it here? It's just that this is a collateral attack and not specifically in the 2255 context. So I can move past that and on to the harmless error state of questions. Well, actually, go ahead. So here, Your Honor, the question presented for the Court is not whether to overrule Avisage or invalidate RICO as a crime of violence. Beginning here with the question is whether the error, the instructional error instructing that RICO conspiracy is a crime of violence was harmless. Here, there is, of course, overwhelming evidence of the conviction, overwhelming evidence at trial. And beyond the fact that there are two counts, RICO conspiracy and substantive RICO, which were the basis or the predicates for the 924C conviction. They are not only coextensive or inextricably intertwined. They are based on the exact same conduct. Can I just back up a little bit when you say harmless? Are you talking both about harmlessness on the merits and also the prejudice prong for procedural default? So we did argue and do believe that this case, the claim was procedurally defaulted. So in your view, is there any distinction when we're talking about the harmlessness or prejudice inquiries between the prejudice prong for procedural default and then the harmlessness on the merits? Or do those two inquiries collapse? Are they effectively the same? Or so close that it is a mistake for us to treat them in any separate way? They are separate as a matter of law here. Functionally, as Your Honor suggests, they do in some respects collapse on one another. Although then in habeas cases, in cases like this, shouldn't we always go to the merits? Shouldn't we not get into this purely procedural as to whether we can consider something? Congress had some reasons for limiting what we can consider and so on. But if in the end what we can consider depends on the merits of the case, shouldn't we save everybody a whole lot of time by going directly to the merits, which may well be your way. I mean, you know, I'm not saying you lose on them at all, but just get to them on the merits rather than on this question of cause and prejudice. Perhaps that would be more efficient, although I think there is on the question of procedural default, there is law on that point saying that we should consider both the cause and the prejudice. Although I do understand and take on board your point that in some respects it is more efficient to go to the merits and I can go to the merits here. Although before we do, and I think that's probably the wisest use of time, cause is a separate question, right? Even though there may be a question, and I don't know the answer, whether the prejudice prong of procedural default winds up being an effectively identical question to the harmlessness question on the merits, that nevertheless would be completely distinct from the question of whether there's cause. In other words, whether he should have argued this even before Davis is gone. So if you were correct, if you raised procedural default and a court were to agree with you that there was no cause for failing to raise this below, then it would end, right? We don't even get to the prejudice inquiry. We don't get to the merits. That's correct. The second part of procedural default I'm asking might collapse with the merits, but not the cause prong, right? That's correct. Okay. Do you want to argue cause or? I will or not. We can pass our papers for cause. There was no impediment here to bringing this claim on the direct appeal. We have argued and continue to stand by the position that this claim was procedurally defaulted. For that, I would rest. Yeah, but you haven't spent much time talking cause. And the answer to that that usually is given is the case hadn't come down. How do you expect people to do it? The other side says could be, well, it was in the wind, and so we expect people to do it. But you haven't really spent much time helping us on the. On the cause question. Yeah. I'm not telling you to, but I'm just noting that you haven't. Sure. I'm happy to focus on the cause question. I think that just because there was a change in the law does not mean that there was an impediment to raising this claim. And I agree with Judge Nardini that the cause question is distinct from the prejudice question, which in some respects can collapse onto the merits. A word on RICO here as a divisible statute, because it was brought up earlier. So the law here is that in a case of substantive RICO and under Ibizaj, the court looks to the underlying racketeering acts. And although it did not explicitly say so, the court there did apply something of a modified categorical approach. The Martinez court, which followed that, it didn't cast doubt on the fact of RICO as a crime of violence. It, in fact, went to great lengths to explain all of the specific ways that RICO could be proved and contrasted that with something like endangerment of a child, which was very general and could be satisfied any number of ways. In fact, in Martinez, the question was really whether one RICO, one underlying RICO predicate could serve as a crime of violence. And the court there didn't reach that, but suggested it was a possibility. Here, that is not what we have. Here, we have there were 10 racketeering acts alleged. Count one, the substantive RICO act, included eight robberies alleged as racketeering acts. The jury found six of them proved. It found the sub-predicates proved, both conspiracy to commit robbery and a completed robbery. Five of those were New York state robberies. The sixth was the New Jersey state robbery. The court was very specific in going through and taking the verdict on that point. And additionally, and beyond that, the court specifically had an interrogatory as to whether the prior— How do you respond to counsel's argument that these are not—Congress did not intend for these to be separate federal crimes, and therefore we can only look at this categorically? Looking at the RICO statute categorically? I think RICO sets out a number of different ways by which a substantive violation of that statute can be proved, which in effect makes it divisible because you can go through and prove it by jury. You say so, but the argument opposing counsel makes is that in fact while we might be able to do that, that isn't what that statute did. And that therefore we have to look at it in the traditional categorical approach, which is to say, is there one way of violating this statute that does not meet the requirement of violence? I mean, he's making what he said is a simple argument. This is what RICO is. This is what RICO was intended to be. Though you can talk about dividing it, we shouldn't divide it. Now, that's a new argument. But— And is that measured by double jeopardy principles? I'm sorry. I'm not sure if I understand that. Well, like block burglar, right? You're going to look at the overlap of the elements, right? If you look at—let's say somebody's charged, Mr. Speed is convicted of this particular racketeering charge, right? And, oh, I don't know, a year later he's indicted for another racketeering charge with different predicates. Would it be your view that exclusively because the predicates charged are different, that by definition it's different under the block burglar test, and therefore it's not the same offense as opposing counsel was suggesting? Or would there be a more complicated analysis to say, well, you know, if you have alleged that the enterprise is made up of the same people, let's say it was a robbery crew, okay? And the first racketeering charge—or the first racketeering conviction was for robberies one through six. And the second racketeering charge that came a year later was for robberies seven through ten, okay? Completely different predicates. They all happen to be robberies. And I'm using robberies because we can all agree that it's quite likely if anything's violent, a robbery's violent. But let's say they allege that the enterprise was identical, right? The same robbery crew, the same plan, the same everything. And just to make life simple, let's assume that the second set of robberies was not taken into account as relevant conduct at sentencing. Nobody knew about it at the first sentencing, okay? It just came up later, and you all learned about this. Would you suggest that under the Blockberger test that—would there be an argument that that's still the same offense because it was the same enterprise? They were operating the same sort of pattern of racketeering activity. Just the manifestations may not have been the ones that we knew about during the first prosecution. I don't know the answer to that, so that's why I'm asking the question. And I don't know if I'm even asking—tell me whether you think that's even the right question for me to be asking. Well, I would not presume to do that. But I recognize that I'm over time. No, please, go ahead. So I think if I follow Your Honor's hypothetical correctly, what you're asking is, is a RICO— is there a double jeopardy problem with a later RICO charge that has different underlying predicates? And if there is a double jeopardy problem, does that shed any light on our question here about the modified categorical approach? And the reason I go there is because opposing counsel is suggesting the question is, are these different offenses? I don't know if perhaps that's what you mean or not, but is that one way of looking at the question of are they different offenses? Would it be measured by the Blockberger test? So I also don't know the answer to that question sitting here. I think that perhaps I would reframe the question slightly differently, which is, what are the ways that a substantive RICO violation can be satisfied? And going through, it kind of necessarily is a divisible statute because there are so many ways, and they are explicitly listed, as opposed to kind of these more general statutes that don't specify that. I think that's the problem, elements that these are specific, and they have specific predicates which have specific elements, and they can be satisfied different ways. And I think that there's harm in considering this as a simple rule where simply we throw out all of RICO as a crime of violence, given the many, many clear crimes of violence that the statute covers. The opposing counsel said that, gave us some hypotheticals where it would be very difficult to make the division, and we put to him some situations where it would be fairly easy to make the division, and he said, but to do that, depending on the charge to the jury, whether we check box or so on, would be getting into precisely the kind of discussion and analysis that the categorical approach was designed to avoid. Now, that's interesting, and again, it's all very new to me, but what do you say to that? That doing what you tell us looks like a very sensible division of RICO would actually, in practice, for the reasons opposing counsel gave, get us into the very kind of factual determination that the categorical approach, which may be an abomination, but it is there, is designed to avoid. So I would say in response to that that the approach that this is designed for is the modified categorical approach, which is the one we have to take here, and that it may not fit neatly into the categorical box, which is why this circuit in Ibizaj and also in Martinez took the modified categorical approach, which it is a reasonable one here because the elements are clear to the RICO predicates because they have to be alleged. And I certainly understand your point, Your Honor, but respectfully, I would disagree that this gets into exactly what we want to avoid. I think it is a way to live with what we have in a reasonable way. Thank you. Thank you very much. We'll hear from Mr. Zass. You've got two minutes for rebuttal. And can I ask you to address the question that your opposing counsel raised, but we didn't really get into it, is do you think that plain error analysis applies to this case or not? And if not, why not? That's where I was going to start. So Frady controls on this point. The Supreme Court held in Frady that the applicable standard on 2255 is not plain error. It's cause and prejudice. And that spawned its own jurisprudence. About eight years later in Brecht, the Supreme Court clarified the test, which is did the error have a substantial and injurious effect or influence on the jury's verdict? We deal with the cause and prejudice in our reply. I think we cite maybe a dozen cases that have all rejected the argument that a defendant, just as Sykes and James were being decided, so the Supreme Court had held that the residual clause of ACCA was valid. We're still supposed to be raising that issue. So can I just ask you, isn't that sort of anomalous that a defendant can not raise an issue before the district court? Comes up on appeal, direct appeal to us, says, look, I didn't raise this below. It's not waived, but it never came up. I want to raise it before this court in the first instance. And now you've got to go through all four of the Olano factors, including to show that it's plain or obvious at the time of appellate consideration. And assume at the time of direct appeal, we say, well, gosh, there's no law directly on point, and say this for coming up on direct appeal. We say, well, look, you've got Ivisage, and I'm sorry Martinez has cast doubt on it, but it hasn't been overruled. You lose. Why is it that someone can wait even longer? Or let's say this. They don't file, no, they file the direct appeal. They exhaust the issue. We say no. The very next day, they file a 2255, and they say, oh, yeah, I have to do cause and prejudice, but guess what? I am now free from the shackles of Rule 52B, and on a collateral attack, somehow it would be, I guess, your view, that now it's easier to raise this sort of a claim. Why would that be? Put crisply, as you already did, is why should it be easier on 2255 than on plain or on direct appeal? And the fact is it's much, much harder because of other constraints. So Congress has put, has developed, you know, a maze of procedural and substantive. So what would be the constraint in the scenario I just laid? I guess you'd have the relitigation bar. Sure. You'd say, well, we ruled against you, therefore you lose. Is that the constraint? On direct appeal, for this error, we would have had the benefit of the Chapman harmless errors standard, right, where the government has the burden of proving beyond a reasonable doubt that there's no possibility that the error had an effect. But because we're on 2255, we don't get that. We get the much — Well, not at any possibility distance. I think Chapman's phrase is — Beyond a reasonable doubt, right? I think Chapman's phrase is — Beyond a reasonable doubt, not beyond any doubt. No, beyond a reasonable doubt that there's no possibility, I think, is the way it's phrased. And that's just one example. You know, we have to — Mr. Speed's case, he had to get permission from this Court to do a second or successive. He had to show that the error violated clearly established — But your basic argument is that there are sufficient other reasons, not necessarily related, because of which Congress might not want this particular requirement to be met. Do we cohere completely? No. But we often say it's so hard on this that we don't do that. And you're saying that the Supreme Court has actually said that. Yes. And it is. I mean, I agree with you, Your Honor. Which doesn't mean it's logical, but — It's got to be tougher. But collateral review is still available for miscarriages, for fundamental errors. So just on the prejudice problem here, if we're right on the point we've argued here, there's no — neither count one nor count two qualifies as a crime of violence.  So that's prejudice. He would not be facing the 84-month extra sentence. So I just wanted to deal with — Please, you can make one more — if you want to make one more point, I know we've asked some questions. You can grab one more point. Thank you so much. I wanted to just go back to Judge Caleb Ray's question, which is — yeah, you could say it's subject to the modified categorical approach. But the question is, what's the support for that? And if you look at the text, which sets out the elements, the structure, including the penalty provision, all these myriad of crimes have a zero to 20 range, the same one, which would suggest it's one crime rather than many. If you look at the legislative history of RICO, which is very complicated, but I have found nothing to suggest that Congress was trying to create this infinite number of individual RICO offenses. And the peril of injecting a little bit more time onto you. Do you think that the Blockberger test has anything to do with this, or is that just — is that a frolic or a detour or even worse? I don't think it's directly relevant. I think the question is, when a RICO case does charge some violent predicates, does that become an element effectively of the RICO offense? And elements, by definition, are those things that must be pleaded in the indictment and the jury must find beyond a reasonable doubt in every case. Even where robbery or murder or whatever is the predicate, the jury is not required to find it. Yes, the jury will find it in some cases. Here we know they found a robbery. But that doesn't make it an element. Not everything the jury may find or may be asked to find is an element. I did want to give you a real double jeopardy case that might be useful here. This is a real Second Circuit case. I'm not sure which one it is, but it's in the Bogarich line of cases. A defendant was tried in state court. I think it might have been for robbery, but it was for a violent crime and was acquitted and then was charged federally under RICO. And one of the predicate acts was the crime for which he had been acquitted. And he said, a jury has already found me not guilty of that crime. That's an element of the federal RICO offense. Therefore, double jeopardy applies and you can't prosecute me. This court rejected it and said, no, it's not an element. Let me read blatantly Justice Pierce's opinion in United States against Miller, 116F3rd 641 at page 675. I don't think it's in the briefs. The relevant portion here is RICO was not intended to incorporate the elements of the penal codes of the various states where acts of racketeering occurred, but only to provide general substantive frames of reference. And that's what we're saying. It's not an element. The jury has to find it to have that predicate act be proven. But that's no different from a gun-knife kind of case where a judge may say, was the assault with a deadly weapon? Ladies and gentlemen, for my information, did you find it to be a gun or a knife? We found beyond a reasonable doubt it's a knife. That doesn't make a knife an element. It's just one way of committing that offense. And that's what's going on here. Lots of ways. By design. Congress said we want to catch these organized criminals. We want to have a broad sweep and get in everything or almost everything. But broad, as this court has said many times, doesn't mean divisible. And I think the mischief that I raised earlier is a real thing. I mean, some of these, in this case, the RICO offense was tried contemporaneously with the 924C offense. But that won't always be the case. There will be ACCA cases, for example, where a prior was a RICO offense from 20 or 30 years ago. And a court, unlike a traditional modified categorical approach, can't just look at the judgment and say, Oh, 1962C, crime of violence, you have to go. And it would be the vagaries of whatever district court the person was convicted in. Can we get the records? Can we get the trial transcript? Was there a special verdict? If there was, that person is on the hook for a mandatory minimum. But the person who just didn't get a special verdict is off the hook. That's exactly the kind of unfairness and administrative complexity that the court has repeatedly said we don't want to engage in this business. So I think the simple answer, again, is the best answer. Thank you. Okay. Thank you very much. We appreciate arguments from both counsel, and we will take the case under advisement. Thank you both.